[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14765
Non-Argument Calendar

_____

D.C. Docket No. 2:20-cv-00237-ECM-SRW


MARLA RENEA SMITH, by and through her
Next Friend, Jasmine Rachelle Smith,
JASMINE RACHELLE SMITH,

                                                          Plaintiffs-Appellants,

versus

KAY IVEY, Governor of the State of Alabama,
in her official capacity,
BRIAN HASTINGS, Director of Emergency Management
for the Emergency Management Agency of Alabama,
in his official capacity,
SCOTT HARRIS, State Health Officer at the Alabama
Department of Public Health, in his official capacity,

                                                          Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(July 21, 2021)

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Marla Renea Smith, by and through her next friend Jasmine Rachelle Smith, appeals the district court's dismissal of her complaint for lack of Article III standing. Smith argues that the district court erred in finding that a supplement to Alabama's Emergency Operations Plan was no longer in effect and did not substantially threaten to injure her. Upon consideration, we affirm the district court.

## I. BACKGROUND

Marla Smith is a profoundly mentally disabled woman. She cannot dress, feed, or make decisions for herself and relies on her sister, Jasmine Smith, to do those things for her.

In 2017, Alabama Governor Kay Ivey published an updated Emergency Operations Plan as authorized by the Alabama Emergency Management Act of 1955. Ala. Code § 31-9-6. The Plan provided procedures to guide state agencies in statewide emergencies and required each state agency tasked with emergency responsibilities to provide a functional annex to the Plan. The Alabama Department of Public Health's Annex, "Emergency Support Function 8," included a document that provided criteria for hospitals engaged in mechanical ventilator triage. The Annex's ventilator triage protocol instructed healthcare workers not to offer mechanical ventilator support to patients who were suffering various forms of end-

2

stage organ failure. One triage criterion also read: "Persons with severe or profound mental retardation . . . are unlikely candidates for ventilator support." In 2019, Alabama's new Crisis Standards of Care Working Group was advised that these triage criteria were no longer accepted or appropriate, and Alabama removed the Annex from its new Crisis Standards of Care. But the Annex remained available online for a short time.

In March 2020, when the COVID-19 pandemic was worsening, the Office for Civil Rights at the United States Department of Health and Human Services began investigating the Annex's triage criteria. The Office closed its investigation with a finding of no liability after Alabama agreed to remove the offending criteria from the Internet and declare publicly that the criteria were no longer in effect and that it would not implement similar criteria in the future.

Smith later filed a complaint against Governor Ivey and other relevant state officials—whom we refer to collectively as "the state"—for a declaratory judgment that the Annex violated her constitutional rights. She also moved for a preliminary injunction to require the defendants to formally repeal any portions of the Plan that would allow discrimination in ventilator distribution based on a patient's mental disability. The district court dismissed Smith's complaint, holding that she lacked standing because she had not alleged an injury in fact. Smith timely appealed.

3

## II. STANDARD OF REVIEW

We review a district court's dismissal of a complaint for lack of standing *de novo*. *See Taylor v. Polhill*, 964 F.3d 975, 979 (11th Cir. 2020). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1)." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991)). The state moved to dismiss Smith's complaint through a factual attack on subject matter jurisdiction under Rule 12(b)(1). A factual attack on subject matter jurisdiction uses "material extrinsic from the pleadings, such as affidavits or testimony." *Stalley*, 524 F.3d at 1233. In a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The state's motion to dismiss attacked subject matter jurisdiction by alleging that Smith lacked standing because the Annex was no longer in effect.

## III. DISCUSSION

To establish standing, a plaintiff must show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,*

4

136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). However, when a plaintiff seeks prospective relief, such as a declaratory judgment or injunction, the injury requirement changes. Instead of identifying a past injury, the plaintiff must "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future," and that injury must be "real," "immediate," and "definite." *Lujan*, 504 U.S. at 560, *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999).

There is no dispute that Smith has not suffered a past injury. That is, there has never been a ventilator shortage that required emergency triage during which a doctor denied a ventilator to Smith because of the Annex. Instead, Smith argues that she can sue over the Annex because she is at substantial risk of future injury. She reaches this conclusion based on her assertion that the Annex has not been formally repealed or judicially invalidated.

We will assume for the sake of argument that Smith's premises are correct. That is, we will assume without deciding that her likelihood of future injury depends on the validity of the Annex under state law and not something else, such as the state's intent to stand by it or a hospital's willingness to follow it. Even granting Smith the benefit of that assumption, we reject Smith's argument for the reasons below.

First, contrary to Smith's argument, the Annex is not a rule under the Alabama Administrative Procedure Act that must be officially repealed. She concedes that the state did not promulgate the Annex in conformity with the AAPA's prescribed procedure but nevertheless contends that the state must comply with notice-and-comment rulemaking to revoke it effectively. She appeals to the AAPA's definition of a "rule," which in relevant part provides: "Each agency regulation, standard, or statement of general applicability that implements, interprets, or *prescribes law or policy*, or that describes the organization, procedure, or practice requirements of any agency." Ala. Code § 41-22-3(9) (emphasis added). Smith also points to the AAPA's two-year limit on challenges to rules for non-compliance with rulemaking procedure, arguing that this limit implicitly foresees that some rules would go into effect without complying with the AAPA. *See Id.* § 41-22-5(d).

We disagree. The Alabama courts have held that the mere fact that something resembles a "rule" as defined by the AAPA does not require the state to follow the AAPA's notice-and-comment requirements to promulgate or revoke it. In *Families Concerned About Nerve Gas Incineration v. Alabama Department of Environmental Management*, public-interest groups sued the Alabama Department of Public Health to invalidate certain hazardous-waste facility permits. *See* 826 So.2d 857, 860 (Ala. Civ. App. 2002). The public-interest groups contended that the Department's cancer-risk factor was a "rule" and therefore was invalid unless it had passed the AAPA's

6

rulemaking procedures. *See id.* at 862. The Court of Civil Appeals of Alabama held that the cancer-risk factor was not a rule because it was "not binding" and was "subject to change." *Id.* at 864. "The touchstone of a legislative rule is that it establishes a binding norm. However, if the agency remains free to consider the individual facts in the various cases that arise, then the agency action in question has not established a binding norm." *Id.* at 869 (polished) (quoting *Center for Marine Conservation v. Brown*, 917 F. Supp. 1128, 1151 (S.D. Tex. 1996)). The Supreme Court of Alabama adopted the reasoning of *Families* in *Alabama Department of Environmental Management v. Coosa River Basin Initiative, Inc.*, 826 So.2d 111, 116 (Ala. 2002). Like the cancer-risk factor in *Families*, the Annex is not binding. The Annex "highly *recommend*[s]" that it "be *considered* for endorsement" and describes its "purpose" as being "*offered* as a *template* for inclusion in hospital disaster plan/policy following declaration of statewide . . . emergency." (Emphasis added). Because the Annex presents itself as a set of guidelines for hospitals and not a binding norm, it is not a "rule" subject to the AAPA's rulemaking procedures and the state is likewise not bound to follow the AAPA in revoking it.

Second, Smith argues that the Annex still has the force and effect of law because the state promulgated it under the Alabama Emergency Management Act. The Act authorizes the governor to prepare a "comprehensive plan and program for the emergency management of this state" and provides that "all orders, rules, and

7

regulations promulgated by the Governor as authorized by this article shall have the full force and effect of law when a copy thereof is filed in the office of the Secretary of State." Ala. Code §§ 31-9-6(2), 31-9-13.

But Smith is wrong. The state did not promulgate the Annex as a rule with the force and effect of law under the Alabama Emergency Management Act. To give a rule the full force and effect of law under the Act, the state must file a copy of that rule in the office of the Secretary of State. *Id.* § 31-9-13. Every time that Governor Ivey has issued a proclamation in connection with the COVID-19 pandemic, she has filed the proclamation with the Secretary. The record reflects that neither the Annex nor any other part of the Emergency Operations Plan for that matter was ever filed with the Secretary. Just as the state did not need to follow rulemaking procedure to repeal the Annex, Governor Ivey did not need to issue a proclamation to repeal the Annex.

In short, the state's express renunciation of the Annex in compliance with the Office of Civil Rights' request makes it highly unlikely that Smith will be injured by the Annex. In the event of a ventilator shortage, the state has no plans to apply the Annex and has done everything required to repeal it. Smith is not likely to be injured by the Annex and, accordingly, lacks standing to sue.

8

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Smith's complaint.